Bob SCOTT *v.* The Honorable W.J. "Bill" McCUEN, et al.

86-52                                                709 S.W.2d 77

Supreme Court of Arkansas
Opinion delivered May 12, 1986

*Hilburn, Bethune, Calhoon, Forster, Harper & Pruniski, Ltd.*, by: *Sam Hilburn*, for appellant.

*Cliff Jackson*, for intervenor, Cliff Jackson.

*Friday, Eldredge & Clark*, by: *Herschel H. Friday, Paul B. Benham*, and *Robert S. Shafer*, for intervenors, Edward W. Davis, and The Arkansas Telephone Association.

*Friday, Eldredge & Clark*, by: *Michael G. Thompson, Paul B. Benham*, and *Robert S. Shafer*, for intervenor, Arkansas Power and Light Co.

*Sam Bratton*, Counsel to the Governor, for intervenor, Bill Clinton, Governor.

*Steve Clark*, Att'y Gen., *Mary B. Stallcup*, Deputy Att'y Gen., by: *Elizabeth A. Walker*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. This action is filed as an original action under Amendment 7 to the Arkansas Constitution. Its admitted purpose is to seek an early ruling on the ballot title for Initiated Act 1 of 1985. The Secretary of State certified the ballot title before any petition was submitted to him. We have no authority to decide the issue until petitions are submitted to the Secretary of State and he declares them sufficient or insufficient according to the power vested in him by Amendment 7. The Secretary of State had no authority to act prematurely and neither do we. Therefore this action must be dismissed.

Generally, the initiated act would revoke the franchise of Arkansas Power and Light Company. It contains other important features, including provisions affecting electricity, gas and telephone companies. This action began when the Attorney General reviewed the ballot title and popular name, found that the phrases "closed door deal-making" and "influence peddling" amounted to partisan coloring, and changed the phrases. Cliff Jackson, the sponsor of the amendment, filed a petition for a writ of mandamus

in this court to require the Attorney General to certify the title as originally proposed. We refused to issue the writ or bind ourselves on the question of whether the title was impartial or free of deception. *Jackson* v. *Clark*, 288 Ark. 192, 703 S.W.2d 454 (1986).[1]

Jackson then sought and obtained a certification from the Secretary of State that the proposed title was, indeed, sufficient, although no petitions had been filed with that office. As a result, this "friendly" lawsuit was filed by Bob Scott, a taxpayer, as an original action against the Secretary of State claiming the ballot title deficient in 26 respects. Cliff Jackson intervened asking us to expedite our decision.

The Governor intervened asking us, in the name of justice and public interest, to rule on the ballot title in advance of certification of the sufficiency of the petition. The Attorney General, representing the Secretary of State, asks us to approve the title. We ordered Arkansas Power and Light Company joined as a necessary party because its franchise is directly in issue. Edward W. Davis, executive vice-president of the Arkansas Telephone Association, and the association itself intervened. Arkansas Power and Light Company, Davis, and the Arkansas Telephone Association have filed motions to dismiss, claiming lack of jurisdiction and lack of case or controversy; the motions must be granted.

The parties all concede that previously we have only reviewed the sufficiency of the ballot title after the petitions have been certified by the Secretary of State. We are asked to approve the title before certification for two reasons: it is legal to do so and it would prevent the expenditure of state money in counting the signatures when it might prove futile were we to declare the title deceptive and enjoin its submission to the voters, and it would be best to rule before proponents spend time and money securing thousands of signatures and publicizing the proposition.

---

[1] We did not reach the question in *Jackson* of whether Ark. Stat. Ann. § 2-208 (Supp. 1985) unconstitutionally extends our original jurisdiction. *American Party of Arkansas* v. *Brandon*, 253 Ark. 123, 484 S.W.2d 881 (1972); *Berry* v. *Hall*, 232 Ark. 648, 339 S.W.2d 433 (1960).

■ There is no question but that cases questioning the sufficiency of ballot titles have been difficult. They are difficult for those who propose and oppose constitutional change, and they are difficult for us. In *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S.W.2d 356 (1931), we exercised our right to decide if a ballot title was sufficient and set a standard for that review. We held that a title should be free from any misleading tendencies, whether by amplification, omission, or fallacy, and it must contain no partisan coloring. That has been the law ever since. See *Leigh* v. *Hall*, 232 Ark. 558, 339 S.W.2d 104 (1960). Our practice of reviewing ballot titles to prevent deception has proven to be sound. The reports are replete with cases where the voters were being deliberately deceived by ballot titles. See *Johnson* v. *Hall*, 229 Ark. 400, 316 S.W.2d 194 (1958); *Moore* v. *Hall*, 229 Ark. 411, 316 S.W.2d 207 (1958); *Walton* v. *McDonald*, 192 Ark. 1155, 97 S.W.2d 81 (1936); *Bradley* v. *Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952).

There are many cases that have sharply divided this court. See *Ark. Women's Political Caucus* v. *Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984); *Becker* v. *Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982); *Dust* v. *Riviere*, 277 Ark. 1, 638 S.W.2d 663 (1982). The proposals are often controversial and involve the passionate feelings of special groups.[2] The mere difficulty of the issue however or the likelihood of last minute problems with the title does not provide us with a basis for hearing this case or any case prematurely. Our power is derived from Amendment 7. This case is predicated on the argument that since Amendment 7 permits the Secretary of State to certify the sufficiency of the petition and since that determination includes the sufficiency of ballot title, the determination can be made at any time, even before the petitions are filed.

■ Amendment 7 provides in pertinent part:

Sufficiency — the sufficiency of all State-wide petitions shall be decided in the first instance by the Secretary of

---

[2] Not all titles for constitutional amendments are challenged. Notably Amendment 59, proclaiming a cure for our decision in *Public Service Comm'n.* v. *Pulaski Co. Bd. of Equalization*, 266 Ark. 64, 582 S.W.2d 942 (1979), is being studied to determine what it does, in fact, mean. See Act 589 of 1985.

State, subject to review by the Supreme Court of the State, which shall have original and exclusive jurisdiction over all such causes. The sufficiency of all local petitions shall be decided in the first instance by the county clerk or the city clerk, as the case may be, subject to review by the Chancery Court.

We have repeatedly held that our original jurisdiction must be invoked pursuant to Amendment 7. See *Berry* v. *Hall*, *supra*; *Hargis* v. *Hall*, 196 Ark. 878, 120 S.W.2d 335 (1938); *Rambo* v. *Hall*, 195 Ark. 502, 112 S.W.2d 951 (1938). Our jurisdiction attaches only after the petition is declared sufficient and that determination must be of the sufficiency of both the title *and* the signatures. See *Bailey* v. *Hall*, 198 Ark. 815, 131 S.W.2d 635 (1939). The Secretary of State shall only determine the sufficiency of the petition after the petition is filed with the signatures, and not before. (Many petitions are necessary to gather the number of signatures required, but they are considered to be only one petition. *Czech* v. *Baer*, 283 Ark. 457, 677 S.W.2d 833 [1984].) In *Rambo* v. *Hall*, *supra*, the petitioner filed an original action in this court seeking to enjoin the Secretary of State from declaring the sufficiency of a proposed bill. We held that the action was premature, because, "until the Secretary of State shall have acted upon the sufficiency of the petition and his action therein shall have been properly challenged, we have nothing to review." Just as the Secretary of State had no authority to certify the ballot title, we have no right to rule on this case at this time.

We simply cannot create our own right to answer legal questions regarding initiated acts; that right must be given to us by the constitution. *American Party of Arkansas* v. *Brandon*, *supra*; see also *Berry* v. *Hall*, *supra*. Moreover, no controversy is presented. No genuine controversy will exist until the petition is filed and the Secretary of State declares it sufficient or insufficient. We do not give advisory opinions or rule on questions which may be moot. *McCuen* v. *Harris*, 271 Ark. 863, 611 S.W.2d 503 (1981); *Rambo* v. *Hall*, *supra*. If the proponents are unable to gather the requisite number of signatures, the question raised will be moot.

The argument for an early decision, primarily to save the

sponsors' time and money has another side. Should we devote the time, effort and financial resources of this court and the parties to decide an issue that may never be presented to the voters? What if the Secretary of State refuses to cooperate with a sponsor? Would we alter Amendment 7 and order him to do something clearly not required? Would a premature decision by us be binding for four, six or eight years? Who decides who the parties are to be in a friendly lawsuit? Friendly to whom? Our existing procedure does have a distinct advantage: it keeps us all honest. Sponsors know it is to their advantage to present an honest title so it will not be stricken at the last minute and we know that we are not rendering merely an advisory opinion which may become moot. We know our decision counts and we will be accountable for it. Any other course would discourage both honesty and responsibility; sponsors would be inclined to offer a misleading ballot title that might pass unnoticed and we would be deciding the case in the abstract.

Our legal procedure, indeed our legal system, is not necessarily quick or expedient but it has proven far better than one that rushes to premature judgments; one where the people and institutions affected can only be anticipated and one with only a hope that all pertinent issues have been addressed. It is our function to adjudicate not advise, and any deviation from that principle, however well-intentioned, is presumptuous. If the sponsors of this act gather sufficient signatures, if the Secretary of State certifies the petition as sufficient or insufficient, and if a court challenge is made of that decision, we will then decide the matter.

Dismissed.

PURTLE, J., not participating.