J. Bill BECKER et al *v.* Paul RIVIERE, Sec. of State et al, ARKANSAS CREDIT COUNCIL et al

82-221                                      641 S.W.2d 2

Supreme Court of Arkansas
Opinion delivered October 26, 1982

*Jay Thomas Youngdahl* and *Randall G. Wright* of *Youngdahl & Larrison,* for appellants.

*Steve Clark,* Atty. Gen., by: *Frederick K. Campbell,* Asst. Atty. Gen., for appellee Paul Riviere, Sec. of State of Arkansas et al.

*Owens, McHaney & Calhoun,* by: *James M. McHaney,* for appellee/intervenor Arkansas Credit Council et al.

RICHARD B. ADKISSON, Chief Justice. Appellants brought an action in the chancery court of Pulaski County to enjoin appellee, Paul Riviere, Secretary of State, from furnishing the State Board and County Boards of Election Commissioners with the "Ballot Title" of proposed Amendment 60. The trial court held that, although not required, the "Ballot Title" was sufficient and refused to grant the injunction. On appeal, we affirm.

Proposed Amendment 60, which deals with interest rates on loans, was promulgated by House Joint Resolution 7 of the 1981 General Assembly. It was proposed pursuant to Art. 19, § 22 of the Arkansas Constitution which provides:

Constitutional amendments. — Either branch of the General Assembly at a regular session thereof may propose amendments to this Constitution, and, if the same be agreed to by a majority of all members elected to each house, such proposed amendments shall be

entered on the journals with the yeas and nays, and published in at least one newspaper in each county, where a newspaper is published, for six months immediately preceding the next general election for Senators and Representatives, at which time the same shall be submitted to the electors of the State for approval or rejection; and if a majority of the electors voting at such election adopt such amendments the same shall become a part of this Constitution; but no more than three amendments shall be proposed or submitted at the same time. *They shall be so submitted as to enable the electors to vote on each amendment separately.*
(Emphasis supplied)

The General Assembly gave proposed Amendment 60 a "Ballot Title," although Art. 19, § 22 does not require that one be given to an amendment submitted by the General Assembly.

Appellants argue that we should review this "Ballot Title" by the standard we use in reviewing a ballot title of an amendment proposed by the people pursuant to Amendment 7. We disagree. An Amendment 7 standard of review should not be applied to an Art. 19, § 22 "Ballot Title" because there are significant differences between Amendment 7 and Art. 19, § 22.

Amendment 7 does not require publication of the proposed amendment except as may be required by the General Assembly, but it does provide a safeguard by specifically requiring that the proposed amendment have a ballot title. The purpose of such a ballot title is to inform the voter so that he can mark his ballot with a fair understanding of the issues presented. *Hoban* v. *Hall*, 229 Ark. 416, 316 S.W.2d 185 (1958). On review of an Amendment 7 ballot title, we look to see if the title is "free from any misleading tendency, whether of amplification, of omission, or of fallacy." *Bradley* v. *Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952).

On the other hand, as pointed out above, Art. 19., § 22 does not specifically require a ballot title. All that is required

is that the proposed amendments under Art. 19, § 22 "be so submitted as to enable the electors to vote on each amendment separately." So, the purpose of the "Ballot Title" under Art. 19, § 22 is not to inform the voter, but merely to distinguish and identify the amendment. Voters can be presumed to be informed as to the contents of the amendment since Art. 19, § 22 specifically requires an extended publication period of six separate monthly insertions in one newspaper in each county prior to the election. *See Jones* v. *McDade,* 200 Ala. 230, 75 So. 988 (1917).

When the purpose of a ballot title is to identify, as opposed to inform, the title is sufficient if it distinguishes the proposed amendment from others and is recognizable as referring to the amendment that was previously published in the newspapers. A ballot title which meets this test will be upheld unless it is worded in some way so as to constitute a manifest fraud upon the public.

Here, the actual wording of the "Ballot Title" in question is as follows:

An Amendment to Section 13 of Article XIX of the Constitution of the State of Arkansas to Control Interest Rates and Set the Penalty for Violations Thereof.

It is not suggested that this wording is insufficient to distinguish or identify the amendment.

Affirmed.

GEORGE ROSE SMITH, HICKMAN, and PURTLE, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. The ballot title is, of course, misleading. The irony or indignity, as the case may be, is that no ballot title is required for an amendment to the constitution that is proposed by the General Assembly. *Chaney* v. *Bryant,* 259 Ark. 294, 532 S.W.2d 741 (1976).

But the question presented to us is what happens when the General Assembly does attach a ballot title and it is

misleading? Is there any remedy to correct such action? Does this court have the authority to act as it would in a case involving other ballot titles? It is my judgment that once the General Assembly elects to attach a ballot title, that title is subject to the same review as any other. We did not hold in the *Chaney* case that we did not have the authority to intervene in a case involving a defective ballot title. We held that after the people had approved such an amendment, we should be most reluctant to intervene. In *Riviere v. Wells,* 270 Ark. 206, 604 S.W.2d 560 (1980), we held that we had the authority to rule on the ballot form of the proposed constitution of 1980. There was no constitutional or explicit authority in the legislation creating the constitutional convention that granted us that right or power. We found the authority in years of precedents in which this court has considered ballot titles and elections. We found no violation of the separation of powers doctrine and observed that courts should intervene in matters where a department of government attempts to act ultra vires.

In *Riviere v. Wells, supra,* the proponents of the proposed constitution, rather than simply placing on the ballot a "for or against" opportunity, as they should have, created a ballot form as follows:

FOR PROPOSED CONSTITUTION OF 1980

FOR RETENTION OF THE CONSTITUTION OF 1874

This rather shoddy deception was found to be misleading and the proposal was declared void.

The deception in the ballot title before us is not of the same magnitude of that we recently found in the ballot title for proposed amendment 63. *Dust v. Riviere,* 277 Ark. 1, 638 S.W.2d 663 (1982). But if we apply the usual legal test for ballot titles to proposed Amendment 60's ballot title, it still fails. Our general test is that the ballot title must be free from any misleading tendency by amplification, omission, or fallacy, and it must not be "tinged with partisan coloring."

*Bradley* v. *Hall,* 220 Ark. 925, 251 S.W.2d 470 (1952). In applying that test we have said:

> It is our duty, . . . to approve the ballot title only if it represents an impartial summation of the measure and contains enough information to enable the voters to mark their ballots with a fair understanding of the issues presented . . . *Hoban* v. *Hall,* 229 Ark. 416, 316 S.W.2d 185 (1958).

The ballot title for proposed Amendment 60 reads:

AN AMENDMENT TO SECTION 13 OF ARTICLE XIX OF THE CONSTITUTION OF THE STATE OF ARKANSAS TO CONTROL INTEREST RATES AND SET THE PENALTY FOR VIOLATIONS THEREOF.

The proposed amendment itself does four things: (1) It changes the rate of interest allowed which is presently 10%; (2) it raises that limit in the case of consumer loans to 17%; (3) it provides that in commercial loans the limit shall be 5% above the Federal Reserve discount rates; and, (4) it changes in some cases the present penalty for usury. None of these changes is spelled out in the ballot title. In fact, there is no mention at all of "usury," which is the key word contained in the constitution. In my judgment the word "control" is decidedly deceptive. *See Moore* v. *Hall,* 229 Ark. 411, 316 S.W.2d 207 (1958). The proposed amendment controls nothing. The use of that word in its ordinary meaning would be to restrain. It does exactly the opposite — it removes the existing control. So, the ballot title fails the test in several respects. It misleads by omission, it is deceptive, and it is tinged with partisan coloring to make it more attractive to voters. Any misleading characteristics in a ballot title, particularly those involving deception, have been readily rejected. *Dust* v. *Riviere, supra; Bradley* v. *Hall, supra; Becker* v. *Riviere,* 270 Ark. 219, 604 S.W.2d 555 (1980); *Hoban* v. *Hall, supra; Walton* v. *McDonald,* 192 Ark. 1155, 97 S.W.2d 81 (1936).

While the deception in this case does not amount to fraud, it nonetheless exists — the majority does not deny it is

a misleading statement to the voter. Here the deception was unnecessary. While the unvarnished truth in simple ordinary language may risk rejection, it is preferable to reform through deception. With all due respect to the majority I think it is a mistake to set a precedent that will permit the constitution to be changed through deception.

It is not difficult to draft a proper ballot title. But one must have the will to state the facts without deception. Only two years ago we approved a ballot title on the same subject matter. *Becker* v. *Riviere, supra.* In *Becker* the ballot title read:

> AN AMENDMENT TO ARTICLE XIX, SECTION 13 OF THE 1874 CONSTITUTION TO PROVIDE THAT THE MAXIMUM RATE OF INTEREST SHALL NOT EXCEED 10 PERCENT EXCEPT BY LAW ENACTED BY TWO-THIRDS VOTE OF THE GENERAL ASSEMBLY; TO MAKE IT A CRIME KNOWINGLY TO CHARGE MORE THAN THE MAXIMUM RATE OF INTEREST AND TO ALLOW PERSONS PAYING MORE THAN THE MAXIMUM TO RECOVER TWICE THE AMOUNT OF INTEREST PAID.

That title contained every essential bit of information without amplification or omission regarding that proposed amendment, and we unhesitatingly approved it as a fair ballot title. *Becker* v. *Riviere, supra.*

I would grant the injunction.

GEORGE ROSE SMITH and PURTLE, JJ., join in this dissent.

JOHN I. PURTLE, Justice, dissenting. I agree with the dissent filed by Justices George Rose Smith and Hickman. However, I feel some important additional reasons should be expressed. As a general rule, I agree with allowing the people to vote on any proposed changes in our constitution. However, I cannot agree as in this case when the proposal is presented in a manner obviously calculated and designed to

mislead the public. If the public wants to raise the interest rate to 100%, they should have the right to *knowingly* do so (emphasis mine). But to raise the interest rate under the guise of an "Interest Rate Control Amendment" simply is not fair to the public.

In view of the fact that the General Assembly undertook to construct a ballot title it should have been either in a form to identify the proposal or have been framed in terms which would enable the electors to understand its general purpose. This proposed amendment is designed to remove the present 10% interest ceiling and to substitute a maximum of 17% for consumer loans and a floating rate tied to the federal reserve discount rate for other loans. The title mentions neither of these two fundamental and far reaching changes.

The majority opinion apparently determined that the ballot title for proposed Amendment 60 was designed to identify the proposal rather than inform the voters. This opens the door for future proposals to be as deceitful and misleading as desired. It removes all barriers to unfairness and deliberate misrepresentation. The present title is very misleading and deceitful but it is nothing compared with what may be placed on the ballot in future proposals.

Proposed Amendment 60 provides for interest on general loans to be no more than 5% per annum above the federal discount rate. This rate fluctuates many times during the year and sometimes even on a daily basis. The FRDR is determined in Washington, D.C. by the federal reserve board. The rate has ranged from the present rate of 9.5% to a high of 14% within the past several months. Therefore, had Amendment 60 been in effect general loans could have gone to 19%. If the FRDR rises to 20%, the rate of interest on general loans in Arkansas could be 25%. Nowhere does the ballot title give any indication of this tie-in.

This proposed amendment has still another undisclosed facet which is not generally known nor even hinted at in the ballot title. Section 1 (d) (ii) provides in effect that even higher interest rates may be charged if federal law so provides. Therefore, this amendment would allow interest

for consumer loans at 17%, or general loans at 5% above the FRDR, or *as otherwise provided by federal law* (emphasis mine). The fact that the FRB will be a new government entity or would be subject to no control or checks at all by any of the existing branches of Arkansas government is not disclosed or referred to. See *Dust* v. *Riviere,* 277 Ark. 1, 638 S.W.2d 663 (1982) at p. 7. Certainly, no branch of the existing Arkansas government has any control or right of review over the actions of the FRB which will, if Amendment 60 is adopted, establish the FRDR as the controlling factor in Arkansas law on interest rates.

In *Becker* v. *Riviere,* 270 Ark. 219, 604 S.W.2d 555 (1980), we approved a ballot title for the same amendment now presented. It would have been a simple matter to copy the same one for the present proposal. The reason this was not done is obvious. The ballot title adopted is far less revealing and much more susceptible to misleading advertisement. The majority holds that this proposal and future proposals are or may be permissible unless the title constitutes a "manifest fraud." Manifest fraud is not defined in the opinion. Therefore, simple fraud, so long as it is not manifest, appears to be permissible. With this I cannot agree. Before the people are allowed to vote on a proposal the ballot title should be free and clear from partisan coloring and should accurately and fairly set forth the proposition to be voted upon or there should be no title at all except such as is necessary to identify the proposition. The title as presently composed is unabashedly misleading and a great disservice is being done to the people of Arkansas in allowing it to stand in its present form. Therefore, I must respectfully dissent.